Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-672-5991
Facsimile No.:  415-680-1712
Email: gkleiner@rinconlawllp.com

Counsel for KARI BOWYER,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| In re | Case No. 17-50794 MEH |
|---|---|
| SERGIO ROLDAN<br>*aka* SERGIO RAFAEL ROLDAN<br>AND<br>ADRIANA M BUENAVENTURA<br>*aka* ADRIANA MARIA LONDONO,<br><br>Debtors. | Chapter 7<br>Hon. M. Elaine Hammond<br><br>**MOTION TO: (1) COMPROMISE CONTROVERSY CONCERNING REAL PROPERTY; (2) COMPENSATE SPECIAL COUNSEL; AND (3) PAY POST-PETITION INSURANCE PREMIUMS**<br><br>[No Hearing Requested Unless Objection Filed] |

Kari Bowyer, Trustee in Bankruptcy of the estate of the above-named Debtors, hereby moves the Court for an order authorizing her to enter into an Agreement to Settle Disputes ("Agreement") with Bert and Loretta Birmingham.  The Agreement provides that Bert and Loretta Birmingham will pay to the Trustee the sum of $160,000 to settle certain disputes, as more thoroughly described in the Notice and Opportunity for Hearing on Motion to: (1) Compromise Controversy Concerning Real Property; (2) Compensate Special Counsel; and (3) Pay Post-Petition Insurance Premiums

/ / /

/ / /

/ / /

/ / /

/ / /

("Notice"), filed herewith. An authentic copy of the Notice is attached hereto as **Exhibit A** and is incorporated by reference.

DATED: November 2, 2018      RINCON LAW LLP

By: */s/ Gregg S. Kleiner*
GREGG S. KLEINER
Counsel for KARI BOWYER,
Trustee in Bankruptcy

| | |
|---|---|
| In re<br><br>    SERGIO ROLDAN<br>    *aka* SERGIO RAFAEL ROLDAN<br>    AND<br>    ADRIANA M BUENAVENTURA<br>    *aka* ADRIANA MARIA LONDONO,<br><br>                    Debtors. | Case No. 17-50794 MEH<br>Chapter 7<br>Hon. M. Elaine Hammond<br><br>**NOTICE AND OPPORTUNITY FOR HEARING ON MOTION TO:**<br>**(1) COMPROMISE CONTROVERSY CONCERNING REAL PROPERTY;**<br>**(2) COMPENSATE SPECIAL COUNSEL; AND**<br>**(3) PAY POST-PETITION INSURANCE PREMIUMS**<br><br>[No Hearing Requested Unless Objection Filed] |

**TO ALL CREDITORS AND PARTIES IN INTEREST AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE THAT** Kari Bowyer, the duly appointed and acting Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Sergio Roldan and Adriana Buenaventura (collectively "Roldan Case" or "Debtors") has entered into an agreement to settle disputes with Bert and Loretta Birmingham ("Birmingham" or "Defendants")[1] with regard to certain real property located at 1050 Ortega Circle, Gilroy, California ("Property"). Also party to the agreement is the Debtors' pre-petition counsel, the law firm of Rossi, Hamerslough, Reischl & Chuck ("RHRC"). The Trustee, Defendants and RHRC have entered into an Agreement to Settle Disputes ("Agreement")[2] which provides that the Defendants will pay to the Trustee the sum of $160,000 to settle disputes related to the Property. From the $160,000 settlement amount, the Trustee shall pay RHRC $105,000. As set forth in greater detail below, the Trustee seeks Bankruptcy Court authorization to enter into the Agreement.

The Trustee also seeks authority to compensate her special counsel, Law Office of Todd Rothbard ("Special Counsel"), the amount of $2,400 in fees and $589.26 in costs[3] for its assistance in pursuing the UD Litigation (defined below). The Trustee seeks Bankruptcy Court authority to pay insurance premiums related to coverage for the Property. The current quarterly premium for the Property is $630. The Trustee seeks authority to pay the premium and future premiums, as necessary.

**Background**

The Debtors filed a Voluntary Petition on April 3, 2017 (the "Petition Date") commencing the Roldan Case. Soon thereafter, the Trustee was appointed to administer the Debtors' estate. On May 3, 2017, the Trustee filed a no asset report with the Bankruptcy Court. On July 6, 2017, the Bankruptcy Court closed the Debtors' case. On January 3, 2018, the Office of the United States Trustee filed a motion to reopen the Debtors' Case. The Roldan Case was

---

[1] On December 7, 2016, Bert Birmingham filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code, Case No. 16-53437, pending before the United States Bankruptcy Court for the Northern District of California, San Jose Division ("Bert's Chapter 13"). Loretta Birmingham, Bert's spouse is not in bankruptcy. At the time that the Agreement was executed, Bert's Chapter 13 was still pending.

[2] A true and correct copy of the Agreement is attached as Exhibit A to the Declaration of Kari Bowyer in Support of Motion to Compromise Controversy. The summary of the Agreement set forth in this notice is for informational purposes only, and in all circumstances the provision of the Agreement will control.

[3] Total current costs are $359.26 comprised of: filing fee of $240.00; process server $100.00, and efiling charges of $19.26. The Trustee is also seeking authority to pay, if necessary, additional costs totaling $230.00 if there are any violations of the Agreement. These additional costs are comprised of: $60.00 ex parte fee to obtain judgment; $25.00 charge for writ of execution; and $145.00 sheriff's fee.

reopened on January 3, 2018 and the Trustee was re-appointed as the Chapter 7 Trustee of the Debtors' case.

The Debtors' case was reopened because the Debtors had failed to include among their scheduled assets their interest in an obligation owned by the Debtors and secured by a Deed of Trust executed by Birmingham on or about December 21, 2006 ("Obligation"). The Obligation is secured by a deed of trust recorded with the Santa Clara County Recorder's Office on March 22, 2007 ("DOT") encumbering the Property. Neither the Debtors nor the Trustee have possession of any note memorializing the Obligation.

At the time that the Debtors' case was reopened, the Obligation and DOT were the subject of litigation, entitled *Bank of America, N.A. v. Sergio Roldan, et al.*, Case No. 17CV313114, pending before the Santa Clara County Superior Court (the "Litigation"). Through the Litigation, Bank of America ("Bank") seeks, among other things, to quiet title in the Property by asserting that the Bank's lien is *senior* in priority to the DOT. Among other things, the Trustee understands that the Litigation sought to prevent the Debtors from completing a scheduled foreclosure of the DOT. To that end, the Bank and Birmingham sought and obtained a temporary restraining order in December 2017 ("TRO"). On June 8, 2018, Superior Court entered an order dissolving the TRO.

On June 15, 2018, a non-judicial foreclosure sale of the Property was conducted ("Foreclosure"). Other than a $50,000 credit bid, no other offers were made at Foreclosure sale. The Debtors' estate was the successful bidder at the Foreclosure. On September 12, 2018, a Trustee Deed was recorded with the Santa Clara County Recorder's Office, as Instrument No. 24022397 ("Trustee Deed").

Prior to the Debtors' case being reopened, the Debtors were represented in the Litigation by RHRC. The Trustee is informed and believes that prior to the Petition Date, the Obligation and DOT were subject to contentious state court litigation, which ultimately validated the ability of the Debtors to enforce the Obligation and DOT ("DOT Litigation"). As a result of the DOT Litigation, RHRC, which asserts an attorney's lien relative to the DOT Litigation and the Litigation, was awarded a judgment for fees and costs on November 3, 2016 in the amount of $69,317.39. The RHRC fee award accrues interest at 10% per annum. As of the date that the Debtors' case was reopened, RHRC asserts that its fees and costs exceed $100,000. As of the date of the Agreement, RHRC asserts that it is owed in excess of $110,000 in fees and costs. RHRC asserts that its rights are superior to any rights of the Trustee, are secured by the DOT, and are enforceable irrespective of the outcome of the Litigation. The Trustee disputes this assertion by RHRC.

According to a trustee's sale guaranty, the Property is encumbered by, among other obligations, (i) the Note and DOT, and (ii) a deed of trust securing a promissory note in favor of the Bank in the original principal amount of approximately $425,190 ("BofA Lien").

On September 6, 2018, the Bankruptcy Court entered its order authorizing the Trustee to employ Special Counsel to assist in evicting Birmingham from the Property. On September 25, 2018, the Trustee, filed an unlawful detainer complaint for possession of the Property entitled *Bowyer v. Birmingham, et al*, in the Santa Clara Superior Court, Case Number 18CV335413 ("UD Litigation"). Birmingham filed an answer to the UD complaint. A trial in the UD Litigation was set for October 31, 2018.

The Defendants assert, among other things, that the Foreclosure must be set aside as it was conducted in violation of multiple provisions of California Civil Code Section §2924 (including §2924(i)), that the Debtors' demand for payment set forth in the Notice of Default and Notice of Sale was overstated and that the Foreclosure may be void ("Defendants' Foreclosure Allegations"). The Defendants assert that the sums that they owe under the Obligation are approximately $160,000. The Trustee and RHRC assert the sums due exceed $200,000.

Seeking to avoid a contentious trial in the UD Litigation, the parties entered into the Agreement on October 31, 2018, which Agreement was approved by the Superior Court that was scheduled to conduct the trial in the UD Litigation. Under the provisions of the Agreement, the parties seek to resolve all their disputes arising out of, connected with, based upon, related to, or associated with, the Property, the Obligation, the DOT, the Trustee Deed, the Litigation, the DOT Litigation, the Foreclosure, Defendants' Foreclosure Allegations and the UD Litigation.

**Settlement**

Just prior to the commencement of the trial in the UD Litigation the parties entered into the Agreement. The Agreement requires: (i) Birmingham to pay to the Trustee the sum of $160,000 ("Purchase Price") in installments; (ii) Birmingham to pay, by no later than November 1, 2018, all arrears, including, but not limited to, principal, interest, real estate taxes, real estate insurance, late fees and all other outstanding fees, owed to the Bank under the BofA Lien through October 31, 2018 or owed to the County or any other individual or entity entitled to payment of the foregoing ("Bank Arrears") as stated in the Bank's October 16, 2018 billing statement totaling $10,517.80; (iii) Birmingham to pay, by no later than the grace period provided by the BofA note, all sums due to the Bank under the BofA Lien or owed to the County or any other individual or entity entitled to payment of the foregoing, including, but not limited to, principal, interest, real estate taxes, real estate insurance, late fees and all other outstanding fees for the months of November 2018, December 2018, January 2019 and February 2019 ("Monthly Bank Fees"); (iv) Birmingham to name the Trustee as the loss payee on all insurance policies that cover the Property and providing the Trustee and RHRC a copy of the insurance binder that provides she is the loss payee of the insurance by November 1, 2018 ("Insurance Binder"); and (v) Birmingham to execute the Stipulation and Order in the UD Litigation.

In consideration of Birmingham fully and timely satisfying the requirements in the Agreement (which are summarized in the prior paragraph), the Agreement requires the Trustee to (a) convey to Birmingham all of the Debtors' right, title and interest in and to the Obligation and the DOT, (b) sign paperwork prepared by or on behalf of Birmingham to set aside the Notice of Default, Notice of Trustee's Sale, and Trustee Deed (assuming the same can be accomplished), and (c) execute a stipulation to dismiss the UD Litigation and permanently seal the file, with each side bearing its own costs and attorney's fees for these specific actions.

The Agreement requires that the Purchase Price be delivered to the Trustee so it is actually received by her as follows: (i) a $10,000 ***non-refundable*** deposit (which sum has been received); and (ii) the balance of the Purchase Price, $150,000, by no later than February 12, 2018 (subject to a grace period, requiring payment by February 21, 2019). There is no grace period for payment of any portion of the Bank Arrears. The Monthly Bank Fees shall be paid on those terms set forth in the Bank's note which the parties recognize contains a grace period. Any such payment beyond the grace period shall be an event of default under the Agreement.

The failure of Birmingham to timely (a) pay to the Bank the Bank Arrears, (b) provide proof of payment of the Bank Arrears, (c) pay to the Monthly Bank Fees, or (iv) pay to the Trustee any portion of the Purchase Price, or make any other payment required pursuant to the terms of the Agreement or deliver the proof of Insurance are an event of default under the Agreement.

If the Agreement is not approved by the Bankruptcy Court because of any default, action or inaction on the part of Birmingham, Birmingham shall forfeit all sums paid to the Trustee under the Agreement and it shall be an event of default under the Agreement. Except as provided in the prior sentence, in the event that the Bankruptcy Court does not authorize the Trustee to enter into the Agreement, all portions of the Purchase Price actually received by the Trustee will be promptly refunded. In the event that that Birmingham defaults under any of the provisions of the Agreement, the provisions of the Stipulation and Order attached as Exhibit 1 to the Agreement (that was filed in the Santa Clara Superior Court where the UD Litigation is pending) shall control.

Should Birmingham default under the provisions of the Agreement, Birmingham has entered into a stipulation to vacate the Property. Once vacated, the Trustee shall market the Property for sale. Subject to further notice to creditors and Bankruptcy Court approval, the Trustee shall sell the Property.

From the Purchase Price, RHRC agrees to accept the sum of $105,000 in full and complete satisfaction of any and all claims it has or could assert against Birmingham, the Debtors' estate, the Trustee, the Note and the DOT ("RHRC Payment"). RHRC has a judgment lien against the Property which accrues interest at 10% per annum. RHRC asserts that by accepting the RHRC Payment, it is materially reducing the sums it might overwise receive through the sale of the Property. Provided the entire Purchase Price is paid to the Trustee, the Trustee seeks herein Bankruptcy Court authority to deliver the RHRC Payment ten (10) calendar days after the later of (i) entry of a Final Order approving the Agreement or (ii) Trustee's receipt of the entire Purchase Price. For purposes of the Agreement, a "Final Order"

shall mean a final, non-appealable order approving the Agreement. In the event that Birmingham defaults under the provisions of the Agreement, RHRC shall not be bound by the RHRC Payment. The Trustee will market the Property for sale and the Trustee will work with RHRC to establish a sum it will receive from the sale proceeds. Any sale of the Property and payment to RHRC from the sale proceeds will be subject to further notice to creditors and Bankruptcy Court approval.

Finally, the provisions of the Agreement include broad mutual releases, which releases are subject to the duties and obligations of the parties set forth in the Agreement.

**The Agreement Is In The Best Interest Of Creditors And Should Be Approved By The Court**
The Trustee believes that the Agreement is in the best interest of the estate and meets the standards of *Martin v. Kane* (*In re A&C Properties*), 784 F.2d 1377, 1381 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986) ("*A&C*"). The *A&C* decision set out four factors for a court to consider in evaluating a settlement: "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."

With respect to the first and third *A&C* factors, probability of success and complexity of the litigation, the Trustee believes that if the Defendants were successful in setting aside the Foreclosure, they could potentially require the Trustee to return title of the Property to Birmingham. The Trustee would then be required to re-notice the foreclosure of the Property, which could take approximately 220 days because Birmingham asserts that the Obligation which secures the DOT has a balloon payment provision that requires that Birmingham first receive a 90-day notice of payment due under a balloon note prior to seeking to commence a foreclosure of residential property. While, in the end, the Trustee may be able to foreclose again on the Property, the estate will have spent significant legal fees and costs in litigating the matter and the equity in the Property would erode because of payments due and owing to the Bank under its note while it continued to accrue, unpaid, as would taxes and insurance. During this time frame, the Trustee would expect the Bank to seek relief from the automatic stay in Birmingham's Chapter 13 case and seek to foreclose its interest in the Property. If the Bank took this action, the estate could lose its interest in the Property and the estate would be rendered administratively insolvent.

It is also possible that the estate would prevail in the litigation to set aside the Foreclosure and Birmingham would be evicted and the Trustee could sell the Property. If the Trustee was to prevail in the litigation, the estate will have spent significant legal fees and costs in litigating the matter and the equity in the Property would erode because of payments due and owing to the Bank under its note. In either scenario, assuming the Bank prevails in the Litigation, the Trustee estimates that the ultimate gross recover to the estate would be $60,000 to $70,000, before payment of legal expenses.

With respect to the second *A&C* factor, difficulty in collection, the Trustee is concerned that Birmingham will not be able to make all the payments required under the Agreement and comply with its other obligations under the Agreement. The Agreement includes provisions to allow the Trustee to quickly to declare a default in the event of a breach by the Defendants. Should a default occur, the Trustee can seek entry of an order in the UD Litigation which will allow the Trustee to obtain possession of the Property without the necessity of filing another unlawful detainer action. In addition, the Defendants have waived all other claims that they could assert through the releases set forth in the Agreement. Hence, if Birmingham fails to perform, the Trustee believes that the estate is protected as best as it can be under the circumstances.

Finally, as to the fourth and final *A&C* factor, paramount interest of creditors, if the Agreement is approved, it will result in the resolution of the dispute with regard to the Obligation, the UD Litigation and the Property. The estate will receive, after delivery of the RHRC Payment, $55,000 in proceeds. From these sums (as discussed in the next section) the estate will pay its special counsel and insurance for the Property.

**Payment of Special Counsel**
The Trustee engaged Special Counsel to assist in pursuing the UD Litigation. Special Counsel agreed to provide services to the Trustee in the UD Litigation for a flat fee of $2,400, plus current and anticipated costs for Special

Counsel of $589.26. The Trustee requests authority to pay Special Counsel, from the Purchase Price, the sum of $2,989.26 in full satisfaction of its outstanding fees and costs.

**Insurance**
Following the Trustee's Foreclosure of the Property, the Trustee caused to be put in place casualty insurance for the Property to protect the estate's interest in the Property. The monthly premium for the insurance is approximately $210 per month. The premium may vary starting in December 2018. The Agreement requires that Birmingham name the Trustee as a loss payee under their casualty policy for the Property. In the event that Birmingham defaults under the provisions of the Agreement, or, for some reason, the Property is uninsured, the Trustee seeks authority to pay the current insurance premium for the Property of $630 (which premium runs through December 28, 2018), plus any additional future payments in the event that (i) Birmingham is unable to maintain insurance on the Property and/or (ii) Birmingham defaults under the provisions of the Agreement. In sum, the Trustee seeks authority, if necessary, to pay for casualty insurance for the Property through the date of closing a sale of the Property.

**PLEASE TAKE FURTHER NOTICE THAT** Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the proposed Agreement and proposed payments or any request for hearing thereon.

**Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;**

**Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;**

**If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default; and**

**In the event of a timely objection or request for hearing, the initiating party will give at least seven days written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.**

      **PLEASE TAKE FURTHER NOTICE THAT** as of January 1, 2005, the United States Bankruptcy Court for the Northern District of California has adopted mandatory electronic filing. If you are not currently qualified to file papers with the Court electronically, you should consult the Court's website (www.canb.uscourts.gov).

DATED: November 2, 2018    RINCON LAW LLP

By: */s/ Gregg S. Kleiner*
Counsel for KARI BOWYER, Trustee in Bankruptcy

Gregg S. Kleiner, STATE Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335, San Francisco, California 94104
Telephone No.: 415-672-5991 / Facsimile No.: 415-680-1712 / Email: gkleiner@rinconlawllp.com